[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 14-11214
Non-Argument Calendar
_____

D.C. Docket No. 1:13-cv-02217-SCJ

BENJAMIN BURGESS,
RHONDA BURGESS,
HEIDI HOWARD,
JOYCE MARTIN,
BETH KARAMPELAS,
TERRI DACY,
MICHAEL DACY,
individually and on behalf of all others similarly situated,

                    Plaintiffs-Appellants,

versus

RELIGIOUS TECHNOLOGY CENTER, INC.,
ASSOCIATION FOR BETTER LIVING AND EDUCATION
INTERNATIONAL,
NARCONON INTERNATIONAL,
NARCONON OF GEORGIA, INC.,

                    Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(January 26, 2015)

Before WILSON, ROSENBAUM and KRAVITCH, Circuit Judges.

PER CURIAM:

Benjamin and Rhonda Burgess, Heidi Howard, Joyce Martin, Beth Karampelas, and Terri and Michael Dacy (collectively "the plaintiffs") appeal from the district court's dismissal of the class action suit against Religious Technology Center (RTC), Association for Better Living and Education (ABLE), Narconon International (NI), and Narconon of Georgia (NNGA) (collectively "the defendants"). For the reasons that follow, we affirm.

I.

The plaintiffs filed a class-action complaint in Gwinnett County state court on behalf of themselves and others similarly situated who had paid money to obtain drug and alcohol rehabilitation services at NNGA. The defendants removed the case to federal court under the Class Action Fairness Act, 28 U.S.C. § 1332(d). In the complaint, the plaintiffs alleged that the defendants used misrepresentations to induce people to enroll in their drug and alcohol rehabilitation program. According to the plaintiffs, the defendants overstated their success rate; identified the program as a "cure" for addiction; hid the defendants' connection to Scientology; misrepresented the staff's credentials; operated a unlicensed residential facility; failed to monitor the housing conditions; paid commissions for referrals to their program; and failed to comply with the licensing requirements.

2

The complaint listed ten claims against the defendants: (1) fraudulent misrepresentation; (2) breach of contract; (3) unjust enrichment; (4) detrimental reliance; (5) negligence *per se*; and (6) civil RICO claims of (a) theft by deception; (b) mail and wire fraud; (c) false statements to a government agency; (d) credit card fraud; and (e) identity theft.

ABLE, NI, and NNGA moved to dismiss for failure to state a claim under Fed. R. Civ. P. (Rule) 12(b)(6) and failure to plead fraud with specificity under Rule 9(b). RTC moved to dismiss for lack of personal jurisdiction under Rule 12(b)(2). The district court granted the motions. This is the plaintiffs' appeal.

## II.

The plaintiffs first argue that the district court erred by dismissing RTC for lack of personal jurisdiction because the court misapplied Georgia's Long Arm statute and failed to properly analyze whether RTC could be subject to the court's jurisdiction under agency principles. Alternatively, the plaintiffs contend that the court should have granted discovery on the jurisdictional issue to establish RTC's minimum contacts with Georgia.

We review *de novo* whether the district court had personal jurisdiction over a nonresident defendant, accepting as true the allegations in the complaint. *Louis Vuiton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013). If the

3

district court makes any findings of fact in reaching its personal jurisdiction conclusion, we review those findings for clear error. *Id.*

A plaintiff seeking to establish personal jurisdiction over a nonresident defendant "bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009). When a defendant challenges personal jurisdiction "by submitting affidavit evidence in support of its position, the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction." *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990) (internal quotation marks omitted).

To determine whether the district court had personal jurisdiction over RTC, we consider two issues: (1) whether personal jurisdiction exists under the Georgia Long-Arm Statute, and (2) if so, whether the exercise of the court's jurisdiction would violate the Fourteenth Amendment's Due Process Clause. *Louis Vuitton Malletier*, 736 F.3d at 1350. "When a federal court uses a state long-arm statute, because the extent of the statute is governed by state law, the federal court is required to construe it as would the state's supreme court." *Lockard v. Equifax, Inc.*, 163 F.3d 1259, 1265 (11th Cir. 1998). Therefore, we will interpret and apply Georgia's long-arm statute in the same way as would the Georgia Supreme Court. Where the Georgia Supreme Court has not ruled on an issue of state law, we "are

4

bound by decisions of a state's intermediate appellate courts unless there is persuasive evidence that the highest state court would rule otherwise." *Pendergast v. Sprint Nextel Corp.*, 592 F.3d 1119, 1133 (11th Cir. 2010) (internal citations and quotation marks omitted).

Georgia's Long-Arm Statute provides for personal jurisdiction over a nonresident defendant if, relevant to this appeal,

> in person or through an agent, he or she: (1) Transacts any business within this state; (2) Commits a tortious act or omission within this state . . . ; [or] (3) Commits a tortious injury in this state caused by an act or omission outside this state if the tort-feasor regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state . . . .

O.C.G.A. § 9-10-91(1)-(3) (2011).

The plaintiffs allege that personal jurisdiction exists over RTC under all three prongs. But to satisfy each prong, the plaintiffs rely on an agency relationship between RTC and ABLE, NI, and NNGA. Attached to its motion to dismiss, RTC submitted an affidavit of RTC President Warren McShane disputing any such relationship. According to McShane's declaration, RTC holds the licenses to religious trademarks associated with Scientology, but secular trademarks, such as Narconon, belong to ABLE. Moreover, McShane stated that RTC is not the parent company of ABLE, has no license or contract with ABLE, and has not received any money from ABLE, NI, or NNGA. In response, the

5

plaintiffs have submitted several affidavits trying to link RTC to ABLE, as well as numerous documents about the various Scientology groups. They contend that the RTC documents reference and discuss ABLE's programs, such as NI, and thus show the agency relationship.

We agree with the district court that none of the plaintiffs' evidence establishes an agency relationship between RTC and ABLE, NI, and NNGA. Under Georgia law, an agency relationship can arise in three distinct ways: expressly, by implication, or through subsequent ratification by the principal of the agent's conduct. O.C.G.A. § 10–6–1; *Beckworth v. Beckworth*, 336 S.E.2d 782, 785 (Ga. 1985). Express agency arises when the principal expressly grants the agent the authority to act on its behalf. Absent express authority, the court may look to whether agency is implied by the circumstances. *NAACP v. Overstreet*, 142 S.E.2d 816, 826 (Ga. 1965), *overruled on other grounds by NAACP v. Claiborne Hardware Co.*, 458 U.S. 886 (1982).

There can be little dispute that there is no express agency relationship here. McShane's affidavit specifically rejects any such relationship, and the plaintiffs have offered nothing to show an express agency relationship. Nor is there any implied agency relationship. Nothing in plaintiffs' evidence showed any action by RTC with respect to the management of ABLE, NI, or NNGA centers. And there is no evidence showing that RTC ratified any conduct by NI or NNGA.

Finally, under Georgia law, there is no agency relationship between an organization and its parent company simply because the parent may exercise some level of control over its subsidiary. *See, e.g.*, *Schlotzky's, Inc. v. Hyde*, 538 S.E.2d 561, 561-63 (Ga. Ct. App. 2000) (explaining that franchisee was not an agent and franchisor was not liable for acts of franchisee in absence of agreement to be liable even though franchisor may set detailed and strict standards for its product). Therefore, in the absence of an agency relationship between RTC and ABLE, NI, and NNGA, the district court properly concluded that the Georgia Long-Arm Statute did not confer on the court personal jurisdiction over RTC.[1]

Moreover, the district court did not abuse its discretion by denying discovery on the jurisdictional issue. *White v. Coca–Cola Co.*, 542 F.3d 848, 853 (11th Cir. 2008) (reviewing discovery request for abuse of discretion). Generally, "the plaintiff should be given the opportunity to discover facts that would support his allegations of jurisdiction." *Majd–Pour v. Georgiana Cmty. Hosp., Inc.*, 724 F.2d 901, 903 (11th Cir. 1984). But a district court does not abuse its discretion in dismissing the plaintiff's action for lack of personal jurisdiction, even before jurisdictional discovery occurs, when the plaintiff has not diligently pursued such discovery despite the opportunity to do so. *See United Techs. Corp.*, 556 F.3d at 1280-81 (affirming the district court's dismissal of plaintiff's claims for lack of

---

[1] Because we reach this conclusion, we need not address whether RTC had sufficient minimum contacts to satisfy due process.

personal jurisdiction before the plaintiff conducted jurisdictional discovery).  Here, the plaintiffs never served any discovery to RTC, never filed a motion for leave to conduct discovery, and did not even include a proposal for discovery in the Joint Preliminary Report and Discovery Plan.  Under these facts, we cannot say that the plaintiffs acted with due diligence to pursue discovery, and further discovery on the jurisdictional issue was not warranted.  Accordingly, we affirm the district court's dismissal of RTC.

## III.

The plaintiffs next argue that the district court erred by dismissing their claims against ABLE, NI, and NNGA.

"We review *de novo* the district court's grant of a motion to dismiss under Rule 12(b)(6) for failure to state a claim, accepting the allegations in the complaint as true and construing them in the light most favorable to the plaintiff." *Butler v. Sheriff of Palm Beach Cnty.*, 685 F.3d 1261, 1265 (11th Cir. 2012) (citation omitted).  To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must present factual allegations "enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Once a claim has been sufficiently stated, "it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id.* at 563.  "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of

action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations, alteration, and citation omitted). Because courts under CAFA are based on diversity jurisdiction, we apply substantive state law to determine if the plaintiffs' allegations state a claim for relief. *See, e.g.*, *Audler v. CBC Innovis, Inc.*, 519 F.3d 239, 248 (5th Cir. 2008). Like other diversity cases, we apply federal procedural rules. *Id.*

### A. Fraud and Georgia Civil RICO claims

The plaintiffs argue that they sufficiently pleaded their fraud claims with specificity by identifying the time period of the alleged misrepresentations and the specific fraudulent statements the defendants made. They further contend that the RICO claims alleging theft by deception, mail and wire fraud, and false statements to a government agency were not subject to Rule 9's specificity requirements because those claims do not arise from fraud.

Under Georgia law, to state a claim for fraud, the plaintiffs must show "five elements: (1) false representation by defendant; (2) with scienter, or knowledge of falsity; (3) with intent to deceive plaintiff or to induce plaintiff into acting or refraining from acting; (4) on which plaintiff justifiably relied; (5) with proximate cause of damages to plaintiff." *Worsham v. Provident Cos., Inc.*, 249 F. Supp. 2d 1325, 1331 (N.D. Ga.2002); *see also* O.C.G.A. §§ 23–2–52, 51–6–2(a).

9

In pleading a claim for fraud, the plaintiffs "must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Rule 9 thus requires plaintiffs to allege

> (1) precisely what statements or omissions were made in which documents or oral representations; (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) them; (3) the content of such statements and the manner in which they misled the plaintiff; and (4) what the defendant obtained as a consequence of the fraud.

*Findwhat Investor Grp. v. FindWhat.com*, 658 F.3d 1282, 1296 (11th Cir. 2011).

Specificity under Rule 9(b) does not, however, eliminate the concept of notice pleading. *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001) (internal quotation marks omitted). "Allegations of date, time or place satisfy the Rule 9(b) requirement that the circumstances of the alleged fraud must be pleaded with particularity, but alternative means are also available to satisfy the rule." *Durham v. Bus. Mgmt. Assocs.*, 847 F.2d 1505, 1512 (11th Cir. 1988). The particularity requirement may be relaxed for allegations of "prolonged multi-act schemes." *U.S. ex rel. Clausen v. Lab. Corp. of Am., Inc.,* 290 F.3d 1301, 1314 n.25 (11th Cir. 2002). The relaxed standard permits a plaintiff to plead the overall nature of the fraud and then to allege with particularity one or more illustrative instances of the fraud. *See id.* Even under the relaxed requirement, however, a

plaintiff is still required to allege at least some particular examples of fraudulent conduct to lay a foundation for the rest of the allegations of fraud. *See id*.

Under the Georgia civil RICO statute, "[i]t is unlawful for any person, through a pattern of racketeering activity or proceeds derived therefrom, to acquire or maintain, directly or indirectly, any interest in or control of any enterprise, real property, or personal property of any nature, including money." O.C.G.A. § 16-14-4(a). The statute does not require proof of an "enterprise." *Cobb Cnty. v. Jones Group, P.L.C.*, 460 S.E.2d 516, 520-21 (Ga. Ct. App. 1995). Rather, under the Georgia civil RICO statute, the plaintiffs need only establish racketeering activity; that is, "a plaintiff must show that the defendant committed predicate offenses (set forth in O.C.G.A. § 16-14-3(9)) at least twice." *Id.* at 521 (quotation marks and citation omitted). Nevertheless, like any other fraud action, a RICO claim based on fraud must be pleaded with specificity. *See* Fed. R. Civ. P. 9(b); O.C.G.A. § 9-11-9(b).

The district court properly concluded that the plaintiffs failed to state their claims for fraudulent misrepresentation and civil RICO violations because the plaintiffs failed to plead these claims with specificity under Rule 9(b). Here, the plaintiffs identified eleven different misrepresentations, but none of the allegations indicated the date, time, or place of any misrepresentation. Nor did the plaintiffs

11

identify which of the many defendants was responsible for the specific statement. For example, in paragraphs 2 and 3 of the complaint, the plaintiffs alleged:

> [i]n 2011, Mr. Burgess and Ms. Burgess sought the services of an in-patient drug and alcohol rehabilitation center . . . . The Burgesses found NNGA through an internet search, and  . . . . spoke with one or more employees of NNGA and/or International, and/or were provided with marketing materials regarding NNGA's program.  The Burgesses relied upon the following representations made by NNGA and/or International . . . .

These allegations fall short of the heightened pleading requirement in that they fail to specify which defendant was involved, what employee they spoke with and for whom the employee worked, when they conducted the internet search, where the misrepresentation appeared, and whether and what marketing materials they were given and by whom.  And, in paragraph 111, the plaintiffs list the eleven misrepresentations, but again they do so only in generalities.

In fact, the allegations in the complaint fail to meet even the relaxed standard; plaintiffs failed to identify any specific examples to illustrate the fraud while pleading the overall nature of the fraud generally.[2]  *See Clauson*, 290 F.3d at 1314.  Moreover, the plaintiffs lump all the defendants together as the sources of the misrepresentations, and they pleaded the who, what, and when elements of their fraud in the alternative.  This court has repeatedly held that lumping multiple

---

[2]   Although at times the plaintiffs identified the specific misrepresentation, such as "NNGA had a success rate of over 70%," the plaintiffs failed to specify who made the statement or what material it appeared in, or when they misrepresentation was made.

12

defendants together in such generalities is insufficient under Rule 9(b).  *See, e.g.*, *Ambrosia Coal & Constr. Co. v. Pages Morales*, 482 F.3d 1309, 1317 (11th Cir. 2007) ("[I]n a case involving multiple defendants . . . the complaint should inform each defendant of the nature of his alleged participation in the fraud." (internal citation omitted)).  Accordingly, we agree with the district court that the plaintiffs' fraud claim failed to meet the heightened pleading requirement of Rule 9(b).

The plaintiffs' civil RICO claims fail for the same lack of specificity.  And although the plaintiffs argue to the contrary, a review of the complaint shows that the same misrepresentations alleged as fraudulent form the basis for the RICO claims.  For example, in paragraph 142 setting out the claim for mail and wire fraud, the plaintiffs alleged that "Defendants distributed the following false statements and/or representations . . . through the mail, telephone wire facilities, and/or Internet."  They then list nine allegedly false statements.  And although some of the alleged misrepresentations are specific, such as "NNGA offered a complete cure for addiction," the plaintiffs failed to specify which defendant made the alleged misrepresentation, when that defendant made it, and through what medium.  Thus, the district court properly dismissed the RICO claims as well.

    B.  Breach of contract

The plaintiffs argue that they established the existence of a valid contract and sufficiently alleged a breach based on the misrepresentations NI and NNGA

made regarding the rehabilitation program. They assert that the court improperly declined to address NNGA's failure to act in good faith under the contract for rehabilitation services and state that they identified specific contractual provisions in their responses to the motion to dismiss.

We first note that this count applied only to NNGA, as only NNGA was a party to the contract. *See Kaesemeyer v. Angiogenix, Inc.*, 629 S.E.2d 22, 25 (Ga. Ct. App. 2006) (explaining that only the parties to a contract are bound by its terms). Thus, the district court correctly dismissed this count against ABLE and NI.

Under Georgia law the plaintiffs must show a breach of a valid contract and damages to the party who has the right to complain about the breach. *Budget Rent–a–Car of Atlanta, Inc. v. Webb*, 469 S.E.2d 712, 713 (Ga. Ct. App. 1996).

Here, the plaintiffs failed to attach a copy of the contract to the complaint, and failed to identify the specific contractual provisions that the defendants breached.[3] In their complaint, the plaintiffs made vague references to a breach, but they never identified the contract provision that formed the basis of their claims. As the plaintiffs later conceded, there were multiple contracts at issue, including the Financial Policy, the Admission and Services Agreement, the Student Rules of

---

[3] The defendants attached copies of the various contracts to their motions to dismiss. Thus, we, like the district court, can review those documents. *See SFM Holdings, Ltd. v. Banc of Am. Sec., LLC*, 600 F.3d 1334, 1337 (11th Cir. 2010) ("In ruling upon a motion to dismiss, the district court may consider an extrinsic document if it is (1) central to the plaintiff's claim, and (2) its authenticity is not challenged.").

Conduct, the Confidentiality Agreement, and various Consent forms.  Some of these were signed only by the patients and others by the plaintiffs and the patients.  Thus, the plaintiffs' list of alleged misrepresentations, not tied to any specific contract or contractual provision, was insufficient to set forth a breach-of-contract claim.

Moreover, in the absence of an express breach, there can be no claim for breach of the implied covenant of good faith.  *See Morrell v. Wellstar Health Sys., Inc.*, 633 S.E.2d 68, 72 (Ga. Ct. App. 2006) ("there is no independent cause of action for violation of the covenant apart from breach of an express term of the contract" (internal citation omitted)).  Accordingly, the district court properly dismissed the breach-of-contract claim against NNGA.

C. Unjust enrichment

The plaintiffs next argue that the court erred by dismissing at this preliminary stage its alternate pleading of unjust enrichment.

In the absence of an enforceable contract, a plaintiff may be able to recover under a theory of unjust enrichment, claiming a benefit conferred on the defendant for which the plaintiff received no corresponding return.  *Ga. Tile Distribs., Inc. v. Zumpano Enters., Inc.*, 422 S.E.2d 906, 908 (Ga. Ct. App. 1992).   Because there was a contract in this case, there could be no claim for unjust enrichment against NNGA.  *See Williams v. Mohawk, Indust., Inc.*, 465 F.3d 1277, 1295 (11th Cir.

2006). Thus, we will consider the unjust enrichment claim as it pertains to ABLE and NI.

"[U]nder Georgia law, an unjust enrichment claim requires the plaintiff to establish the following: (1) that the plaintiff conferred a benefit on the defendant and (2) that equity requires the defendant to compensate the plaintiff for this benefit." *Chem–Nuclear Sys., Inc. v. Arivec Chems., Inc.*, 978 F. Supp. 1105, 1110 (N.D. Ga. 1997); *accord* O.C.G.A. § 9–2–7. The plaintiffs, however, failed to allege any benefit conferred on ABLE and NI. Thus, there is no requirement that ABLE and NI compensate the plaintiffs. *See Brown v. Cooper*, 514 S.E.2d 857, 860 (Ga. Ct. App. 1999). Accordingly, the district court properly dismissed this count of the complaint.

### D. Detrimental reliance and Leave to amend

As the plaintiffs conceded, there is no such cause of action under Georgia law. Rather, the plaintiffs contend, this count should be considered as a claim for promissory estoppel.

The district court did not abuse its discretion by failing to allow the plaintiffs to amend their complaint to address the detrimental-reliance claim or any other deficiencies. We repeatedly have held that plaintiffs cannot amend their complaint through a response to a motion to dismiss. *Rosenberg v. Gould*, 554 F.3d 962, 967 (11th Cir. 2009). In *Rosenberg*, we confirmed that a request for leave submitted in

a footnote in a memo opposing a motion to dismiss was insufficient to require the court to grant leave to amend. We further noted that Rule 7(b) required the plaintiff to submit a copy of the proposed amendment or to describe the proposed amendment when requesting leave. *Id.* (citing Fed. R. Civ. P. 7(b)(1)). Thus, our precedent is clear: the proper method to request leave to amend is through filing a motion, and such motion for leave to amend should either set forth the substance of the proposed amendment or attach a copy of the proposed amendment. *Long*, 181 F.3d at 1279.

In this case, the plaintiffs did not file a motion for leave to amend but instead included the request for leave to amend in the memorandum they filed in opposition to the motion to dismiss. Furthermore, they failed to attach the amendment or set forth the substance of the proposed amendment. Moreover, they could have — but did not — seek relief from judgment under 59(e), or 60(b)(6) in order to seek such leave. *See DiMaio v. Democratic Nat'l Comm.*, 520 F.3d 1299, 1303 (11th Cir. 2008) (discussing failure to seek leave under Rules 15, 59, or 60) (citing *United States ex rel. Atkins v. McInteer*, 470 F.3d 1350, 1361, 1362 n.22 (11th Cir. 2006). Thus, we conclude that the district court did not abuse its discretion.

E.  Negligence *per se*

Addressing the negligence *per se* claim, the plaintiffs contend that NNGA's failure to comply with state licensing regulations caused a harm that the regulations were designed to prevent.

"Georgia law allows the adoption of a statute as a standard of conduct so that its violation becomes negligence *per se*." *Cent. Anesthesia Assoc. v. Worthy*, 325 S.E.2d 819, 823 (Ga. Ct. App. 1984), *aff'd,* 333 S.E.2d 829 (Ga. 1985).  "In determining whether the violation of a statute or ordinance is negligence *per se* as to a particular person, it is necessary to examine the purposes of the legislation and decide (1) whether the injured person falls within the class of persons it was intended to protect and (2) whether the harm complained of was the harm it was intended to guard against." *Id.*  Further, for a violation of a statute to be negligence *per se*, the violation "must be capable of having a causal connection between it and the damage or injury inflicted upon the other person," which "refers not to the proximate cause element of the negligence action [], but rather to the character of the legal duty involved." *Id.*

Here, the plaintiffs alleged that NNGA violated O.C.G.A. § 26-5-3, which defines terms applicable to the regulation of drug treatment programs, and Ga.

Comp. R. & Regs. 290-4-2.[4]  As the district court correctly found, § 26-5-3 merely sets forth definitions and thus provides no basis for a negligence *per se* claim.

With respect to Regulation 290-4-2, the Georgia Department of Human Services established rules and regulations for drug and alcohol rehabilitation programs.  But these regulations were "intended for licensing and inspection purposes and not for the creation of a standard of conduct to protect individuals." *See, e.g.*, *Doe v. Fulton-Dekalb Hosp. Auth.*, 628 F.3d 1325, 1339 (11th Cir. 2010) (discussing negligence *per se* as it pertains to Regulation 290-9-12, which is nearly identical to 290-4-2).   Thus, the district court properly determined that the regulations could not form the basis of a negligence *per se* claim.

## IV.

For the foregoing reasons, we conclude that the district court properly dismissed RTC for lack of personal jurisdiction and the claims against ABLE, NI, and NNGA for failure to state a claim.

**AFFIRMED.**

---

[4]  As the district court noted, this regulation has since been repealed.